UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MUSTAFA NUR, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | CAUSE NO. 3:21-CV-764 RLM-MGG |
| ) | |
| WILLIAM HYATTE and ) | |
| GEORGE PAYNE, JR., ) | |
| ) | |
| *Defendants* ) | |

OPINION AND ORDER

Mustafa Nur has sued Warden William Hyatte and Deputy Warden George Payne, Jr., in their individual capacities, alleging that they subjected him to unconstitutional conditions of confinement while he was imprisoned at Miami Correctional Facility. Mr. Nur sued from prison, so the Prison Litigation Reform Act's requirement that he exhaust all administrative remedies before suing over prison conditions applies. *See* 42 U.S.C. § 1997e(a). The defendants have moved for summary judgment, and Mr. Nur has cross-moved for summary judgment, on the issue of exhaustion of administrative remedies. Mr. Nur requests oral argument to present legal arguments but not additional evidence. Neither party requested a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

For reasons explained in this opinion and order, the court DENIES the defendants' motion for summary judgment [Doc. 12], GRANTS Mr. Nur's motion

for summary judgment, [Doc. 28], and DENIES AS MOOT Mr. Nur's request for oral argument. [Doc. 41].[1]

LEGAL STANDARD

A party is entitled to summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, a court "constru[es] all facts and draw[s] all reasonable inferences in favor of the party against whom the motion under consideration was filed." Hess v. Bd. of Trs. of S. Ill. Univ., 839 F.3d 668, 673 (7th Cir. 2016) (citation omitted). A party can't merely allege a disputed material fact to defeat summary judgment; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

A defendant isn't entitled to a jury trial on contested issues involving exhaustion. Wagoner v. Lemmon, 778 F.3d 586, 590 (7th Cir. 2015) (discussing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)). A court holds a Pavey hearing to resolve issues of fact bearing on exhaustion, but "[w]hen there are no disputed

---

[1] Mr. Nur's action was consolidated for pretrial, non-dispositive matters with several other cases with similar allegations against the same defendants, [Doc. 11], and he requests consolidated oral argument. [Doc. 41]. The exhaustion defense is a dispositive matter, so the court resolves the issue in separate orders.

facts regarding exhaustion, only a legal question, the court may resolve the issue without a hearing. Vela v. Ind. Dep't of Corr., No. 3:16 CV 51, 2017 U.S. Dist. LEXIS 9279, at *2 (N.D. Ind. Jan. 24, 2017).

BACKGROUND

Mustafa Nur alleges that Warden Hyatte and Deputy Warden Payne violated his constitutional rights when they kept him in a restrictive housing unit cell at Miami Correctional Facility from August 13 to October 5, 2020. He alleges he was placed in a cell with a window covered by a metal plate and without any light. Broken glass covered the floor and feces was smeared on the floor, bed, and walls. Mr. Nur claims this treatment violated his Eighth Amendment right to be free from cruel and unusual punishment and he seeks to hold Warden Hyatte and Deputy Warden Payne accountable by way of 42 U.S.C. § 1983.

Mr. Nur sued from prison, so the defendants aren't liable if they can show that Mr. Nur didn't exhaust administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).

*Miami Correctional Facility's Administrative Remedies*

Miami Correctional Facility receives and manages prison grievances according to the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, effective since September 1, 2020. In broad strokes, the policy requires that a prisoner complete a formal

3

grievance and two appeals to exhaust a claim. The parties agree that the written policy is as follows.

A prisoner can complain about prison conditions by filing a grievance with the prison. The prison considers only certain issues appropriate for the grievance process, like staff treatment, medical or mental health, acts of reprisal, and other concerns about conditions of care and supervision in prison. A prisoner starts by completing a grievance on State Form 45471, to be completed no later than ten business days from the date of the incident giving rise to the complaint. An offender grievance specialist is to review any grievance within five business days of receiving the grievance. A specialist either rejects the grievance or accepts and records it. A grievance specialist can reject a grievance if it is untimely, relates to more than one event or issue, is illegible, and the like. A rejected grievance is returned to the prisoner with State Form 45475, "Return of Grievance." It is not appealable, but a prisoner can submit a revised State Form 45475 within five business days of when the grievance is returned.

If a grievance specialist accepts the grievance, the grievance is logged into the prison's computer system and filed with any other grievances filed by that same prisoner. The grievance is marked on the prisoner's log with "I – Formal Grievance." The grievance specialist has fifteen business days to investigate and give a response.

A prisoner who is dissatisfied with the prison's response can appeal the response with State Form 45473. Any appeal is due within five business days of the date of the grievance response. A prisoner can also appeal a grievance if

4

there's no response within twenty business days of when the grievance specialist received the response. An offender grievance specialist is to log the date of receipt of the appeal and forward the appeal to the warden. The warden or his designee is to review the appeal within ten business days of receiving the appeal, and the offender grievance specialist is to give a copy of the appeal response to the prisoner.

A prisoner dissatisfied with the warden's decision can lodge an appeal with the Indiana Department of Correction. The prisoner must check the "disagree" box on the warden or his designee's response and submit the response with the completed State Form 45473 and any supporting documentation. This appeal must be made to the offender grievance specialist within five business days of the warden or his designee's appeal response. A prisoner can also appeal if there's no response within ten business days of when the warden received the first-level appeal. The offender grievance specialist is to document the appeal in the grievance database, logging the prisoner's grievance history with "II – Formal Appeal." An appeal of the warden's decision is reviewed by the Department Offender Grievance Manager and is considered final.

The parties disagree over how this policy was implemented and how Mr. Nur used the grievance process.

*Warden Hyatte and Deputy Warden Payne's Account*

Warden Hyatte and Deputy Warden Payne assert that Mr. Nur didn't exhaust the grievance process. Their evidence includes the Indiana Department

of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, [Doc. 12-2],[2] Mr. Nur's grievance history, [Doc. 12-4], a declaration of Michael Gapski, a grievance specialist at Miami Correctional Facility, [Doc. 12-1], and several grievances, return of grievance forms, and grievance response. [Doc. 12-5 to 12-18]. They include in response to Mr. Nur's motion for summary judgment another plaintiff' complaint and grievance records. [Doc. 33-1 and 33-2].

Mr. Gapski reviewed documents relating to Mr. Nur's grievance history and attests to the grievance policy just described. He then attests to Mr. Nur's documented grievance history, explaining that prison records show no record of any fully exhausted grievance relating to Mr. Nur's complaint. First, Mr. Gapski received a grievance around August 24, but the grievance complained about multiple issues, so a grievance specialist returned it on September 8. The return indicated that the grievance involved multiple issues and could be corrected and returned within five business days. [Doc. 12-5 at 1].

At the same time, around August 24, a grievance specialist received another grievance from Mr. Nur complaining about multiple issues spanning multiple days. The grievance specialist returned the grievance on September 8, explaining it had multiple issues over multiple days, and noting that the grievance could be fixed and resubmitted within five business days. [Doc. 12-6].

---

[2] This policy became effective September 9, 2020. The defendants also include a copy of the policy in effect from April 1, 2020, to September 9, 2020. [Doc. 12-3]. The two policies are materially identical. [Doc. 34 at 2].

A grievance specialist received another grievance from Mr. Nur on September 25 and assigned it number 118114. [Doc. 12-7]. The grievance said it was Mr. Nur's second complaint and complained about urine, feces, and ants in his cell. Mr. Nur asked for cleaning supplies and for the prison to follow internal policy guaranteeing a clean, healthy, safe, and secure environment. The grievance specialist responded on October 20, explaining that cleaning happened routinely. [Doc. 12-8]. Mr. Nur marked "disagree" on the response form and signed it, dated October 23. [Doc. 12-9]. A grievance specialist then received a completed grievance appeal from Mr. Nur, dated November 1. [Doc. 12-10]. The warden's designee responded on December 9, saying, "addressed by staff in grievance response." [Doc. 12-11 at 1]. The prison didn't receive an appeal of the warden's response.

Grievance specialists received another grievance from Mr. Nur on September 25 and assigned it number 118115. [Doc. 12-11]. Mr. Nur complained that he wasn't allowed to shower. The grievance specialist responded on October 20, saying that prisoners were regularly allowed to shower and Mr. Nur wasn't being singled out. [Doc. 12-12]. Mr. Nur marked "disagree" on the response, then signed and dated the response October 23. [Doc. 12-13]. He filed an appeal, signed November 1, and the warden's designee responded, "being addressed by staff." [Doc. 12-14]. The prison received no further appeal.

Grievance specialists received yet another grievance from Mr. Nur on October 2 and assigned it number 118427. [Doc. 12-15]. Mr. Nur complained that he was in a cell with no light since August 13 and claimed he had already

7

filed a grievance but got no response. He asked for a light and for an explanation of why he was placed there and why his grievances were ignored. A grievance specialist responded on October 27, saying that the prison was looking into replacing the lights, that Mr. Nur would be moved to a cell with a light as soon as another prisoner was "moved off the unit today 10-5-20," that grievances are entered so long as they're timely and comply with the rules, and that Mr. Nur was removed from restrictive housing. [Doc. 12-16]. Mr. Nur marked that he disagreed and dated the form November 1, but didn't sign the form. [Doc. 12-17]. A grievance specialist returned the response report with State Form 45475 Return of Grievance and said to sign and return the grievance within five business days. Mr. Nur returned the signed grievance response, and the prison sent a blank grievance appeal, State Form 45473. [Doc. 12-18]. The prison received no response.

*Mr. Nur's Account*

Mr. Nur asserts that he exhausted all administrative remedies available to him. His evidence includes his own declaration, [Doc. 26-7 at 62–66], grievance number 118427 and the response report (attached to the declaration), [Doc. 26-7 at 67–68], two request for interview slips (also attached to the declaration), [Doc. 26-7 at 29–70], the deposition transcript of Michael Gapski, the already-mentioned grievance specialist who also served as Rule 30(b)(6) representative for the prison, [Doc. 26-1], the deposition transcript of Charlene A. Burkett, the Director of the Indiana Department of Correction Ombudsman Bureau, [Doc. 26-

8

2 to 26-5], and the deposition transcript of Stacy Hall, a correctional officer and law librarian at Miami Correctional Facility, [Doc. 26-6].

Mr. Nur's declaration matches some of the defendants' evidence but adds other details. Mr. Nur says he filed two grievances on August 17 which were returned to him. These match the defendants' account. Then, he claims he filed a grievance on August 20 about his cell conditions but didn't hear anything back. He complained to Mr. Grove and Mr. Hammerick, two counselors, that he hadn't received a response to his grievances, and they told him he had to wait for a response. When he didn't receive a response, he filed another grievance on September 20, grievance number 118427. His account about this grievance mostly matches the defendants' — he received a response on October 27, marked "disagree," forgot to sign, was told to fix the response by signing it, fixed it, and received an appeal form. But Mr. Nur also claims he submitted the completed appeal form. He placed it in the case manager's box on N-Unit as he had been removed from restrictive housing by then.

Mr. Nur received no response, so he sent a request for interview to the grievance specialist on January 7, 2021, asking about grievance number 118427. He didn't hear back, so he sent another request for interview to Warden Hyatte on January 19 and a third on January 20 to the grievance specialist. He asked for information about his appeal that was never answered in both requests. He never received response to these requests.

Mr. Nur claims he was told he couldn't appeal unless he waited for a response and he knew he couldn't appeal without a response because appealing required a copy of the prison's response.

Mr. Nur presents Mr. Gapski's testimony as evidence that Miami Correctional Facility didn't follow department policy and made the grievance process impossible. Mr. Gapski, testifying as Miami Correctional Facility's Rule 30(b)(6) representative, described how grievance specialists at Miami Correctional Facility handled the grievance process. He explained that in restrictive housing, like Mr. Nur's unit, a prisoner wishing to file a grievance would complete a grievance form, hand it to a correctional officer, and the correctional officer would put the grievance in prison intraoffice mail to be delivered to the grievance specialists. No grievance is logged until a grievance specialist receives the grievance, and grievance specialists have no way of knowing whether or when a correctional officer accepted a prisoner's grievance, which correctional officer accepted a grievance, or what happened to a grievance that was sent but never received.

Mr. Gapski also described how Miami Correctional Facility handles appeals. The Indiana Department of Correction policy says a prisoner can appeal the prison's response to a grievance. A prisoner can appeal the prison's response or "may appeal as though the grievance had been denied" if there's no response within twenty business days of the offender grievance specialist's receipt of the grievance. [Doc. 12-2 at 12]. The policy adds that a prisoner who wishes to file a

10

first-level appeal must complete State Form 45473 and submit it within five business days of the date of the grievance response.

Mr. Gapski explained things differently, describing an extra unofficial step at Miami Correctional Facility. He said that the prison responds to grievances with an Offender Grievance Response Report. That report explains the prison's response and has a spot to mark "agree" or "disagree." It isn't State Form 45473, which the written policy requires for starting an appeal. If a prisoner wants State Form 45473, he marks "disagree" on the Offender Grievance Response Report and sends it to the grievance specialists. When a grievance specialist receives the report marked "disagree," the specialist sends a copy of State Form 45473 to the prisoner. That copy comes from a grievance specialist and must include the original grievance number on it. [Doc. 26-1 at 46–47]. The grievance specialists forward an appeal to the warden and send a receipt to the prisoner only once the specialists have received a completed State Form 45473.

Mr. Gapski also spoke of how timing is calculated. The grievance policy requires that a prisoner "submit a completed State Form 45471, 'Offender Grievance,' no later than ten (10) business days from the date of the incident given rise to the complaint." [Doc. 12-2 at 9]. The same is true for appeals, except that a prisoner has five business days instead of ten. [Doc. 12-2 at 14]. Mr. Gapski attested that grievance specialists calculate timing based on when they receive an appeal. So an appeal is deemed untimely if not *received* within five business days. Timing doesn't depend on when a prisoner signed an appeal or

11

handed an appeal to a correctional officer, even though prisoners often can't give an appeal directly to a grievance specialist.

Mr. Nur presents deposition testimony of Charlene Burkett, the Director of the Department of Correction Ombudsman Bureau. The Ombudsman Bureau handles prison complaints independently of the Department of Correction and Indiana Department of Administration but doesn't have enforcement power. The Ombudsman Bureau received several complaints from plaintiffs in the consolidated cases, each claiming that Miami Correctional Facility didn't respond to their grievances.

Likewise, Officer Stacy Hall, who was a law librarian in May or June 2021, attested that thirty to forty prisoners complained to her that their grievances didn't receive responses.

## Discussion

Mr. Nur and the defendants move for summary judgment on the exhaustion defense. The governing law is thoroughly set out in the court's opinion and order on cross-motions for summary in Rollins v. Hyatte, 3:21-CV-767-RLM-MGG, slip op. at 11–12, which discussion the court adopts by reference.

Warden Hyatte and Deputy Warden Payne's legal argument is straightforward: the prison's policies plainly require a formal grievance and two levels of appeal. Mr. Nur didn't appeal the prison's response to his grievances about his cell conditions, so he didn't exhaust administrative remedies.

12

Mr. Nur's argument is similarly straightforward: the prison didn't respond to his appeals and didn't have a process to appeal non-responses, so administrative remedies weren't available.

Approaching from Mr. Nur's perspective makes for a clearer picture.

Mr. Nur claims he timely submitted a grievance about his cell conditions and didn't receive a response. Although the written policy required that prisoners appeal non-responses, it was impossible to do so in practice, so Mr. Nur exhausted all available remedies. Mr. Nur supports his claim with his declaration, in which he describes completing the appeal form for grievance number 118427 and placing it in a case manager's box. The prison never responded so, according to Mr. Nur, prison officials made the process unavailable. *See* Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002).

Mr. Nur's account appears to hit a snag with the grievance policy. A prisoner must follow any prison rules that require administrative appeals, id. (citing Pozo v. McCaughtry, 286 F.3d 1022, 1025 (2002)), and Miami Correctional Facility's policy required that prisoners appeal the first-level appeal, the warden's response, and any non-responses as if it had been a response.

According to policy, a prisoner must appeal a grievance response within five business days. The warden is to respond to any appeal within ten business days of receiving the appeal. If he doesn't respond by then, a prisoner can appeal as if a response had come. Under these rules, Mr. Nur would exhaust administrative remedies only if he appealed the response to his first appeal and then also appealed whatever the warden's response was (or any lack of response).

13

This appeals process makes little sense for a prisoner like Mr. Nur who claims (and shows with his declaration) that he appealed to the warden and never got a response. Mr. Nur was to appeal the non-response after a certain amount of time, but he was required to do so by marking the warden's response with "disagree." The defendants and the policy don't explain how a prisoner who receives no response to the first-level appeal can mark "disagree" on a form that he doesn't have and that might not even exist. Nor do the defendants explain how Mr. Nur was to calculate his appeal time when it's based on the warden's receipt of his grievance, which Mr. Nur has no way of knowing, nor control over once he's given his appeal to a prison official.

The requirement that Mr. Nur appeal the warden's response was a dead end because the policy required that Mr. Nur possess the warden's response to appeal it. That's impossible for a non-response and the policy doesn't give any alternate way of appealing a non-response. Despite that, Mr. Nur tried to notify prison staff with his request for interview forms, which also went unanswered.

If Mr. Nur is believed, he has exhausted *available* remedies. Nothing in the written grievance policy tells a prisoner how to appeal if he never receives the warden's response. policy's rules about appeals are "based on the assumption that the prisoner has received a response to his original grievance," and doesn't account for non-responses. Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *8–9 (S.D. Ind. Jan. 10, 2011). This policy gap means "there is no adequate appeals process," so Mr. Nur "cannot be faulted for failing to appeal." Id. (citing Dole v. Chandler, 438 F.3d 804, 809–810 (7th Cir. 2006)).

14

Mr. Nur is entitled to summary judgment on the affirmative defense unless the defendants can somehow prove they're nevertheless entitled to judgment or can show that there's a genuine dispute of material fact requiring a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

Warden Hyatte and Deputy Warden Payne argue that administrative remedies were available and Mr. Nur didn't exhaust them, so they're entitled to summary judgment.

First, the defendants object to certain statements as hearsay. Hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Mr. Nur claims prison staff, like Mr. Grove and Mr. Hammerick, told him he had to wait for a response instead of appeal as if he'd received a response. The defendants argue that the statements are inadmissible hearsay, so can't be used at summary judgment. Carlisle v. Deere & Co., 576 F.3d 649, 655 (7th Cir. 2009). Mr. Nur responds that the statements aren't offered for the truth of the matter asserted. They're instead offered for the effect on the listener, that is, they're offered to show that Mr. Nur was misdirected. The statements aren't offered for the truth of the matters asserted, so the court overrules the objection and denies any motion to strike.

Next, the defendants object to the Ombudsman's deposition, arguing it's irrelevant. They contend that the Ombudsman's testimony isn't relevant to whether Mr. Nur fully exhausted administrative remedies because the Ombudsman doesn't work for the prison or have a hand in resolving grievances. Evidence is relevant if it has any tendency to make a fact of consequence more

15

or less probable than it would be without the evidence. Fed. R. Evid. 401. As Mr. Nur correctly points out, the Ombudsman's testimony would tend to make it more probable that Mr. Nur's grievances were two of many that went unanswered. The objection is overruled.

The defendants argue that administrative remedies were available because Mr. Nur received information about the grievance process during admission and orientation and he has no evidence that he was never told how the process worked. This argument doesn't respond to Mr. Nur's evidence and argument. His argument depends on whether his appeal received a response and whether it was practically impossible to appeal a non-response. Whether he was informed of what the policy said on paper doesn't contradict his claims; Mr. Nur's evidence shows that his appeal wasn't answered and that gaps in the policy (appeals aren't marked until received, the grievance specialists don't know who collects an appeal and when, and the like) allow appeals to go missing.

Next, the defendants argue the administrative process was available because Mr. Blanchard, a plaintiff in a consolidated case, 3:21-CV-160, completed all three steps of the grievance process. If he could, Mr. Nur must have been able to as well.

That Mr. Blanchard exhausted administrative remedies doesn't undermine Mr. Nur claims that *his* appeal went unanswered and couldn't be appealed. Mr. Nur includes evidence of systemic failures to bolster his claim, but his claim rests on his declaration. Plus, Mr. Blanchard received responses, so he, unlike

16

Mr. Nur, didn't face the impossible task of appealing a non-response when an appeal requires a form that comes only with a response.

The defendants argue that Mr. Nur had remedies available because he was given the appeal form, so he had the opportunity to appeal. This argument doesn't account for Mr. Nur's evidence in his declaration that he submitted that appeal. His argument is that the non-response to his appeal made administrative remedies unavailable. The defendants say, "Mr. Nur made the active choice not to appeal his grievance. . . . Since he failed to designate evidence that he complied with the appeal policy after not receiving a response from the facility warden, the Defendants have met their burden to prove noncompliance with the grievance policy." [Doc. 35 at 3–4]. This argument ignores Mr. Nur's declaration. He designated evidence — his own testimony — that he filed the appeal. They fault him for reaching out to others, like counselors and the warden, when he should have appealed the warden's non-response to the Department Offender Grievance Manager. [Doc. 35 at 4]. This again ignores that the policy didn't account for non-responses and required documents that would be unavailable for a non-response to appeal a non-response.

At bottom, Warden Hyatte and Deputy Warden Payne's argument is that they're entitled to summary judgment because they have no institutional records of Mr. Nur's appeal. Their argument doesn't controvert Mr. Nur's evidence that he submitted an appeal because it rests on the faulty assumption that grievance specialists receive and log every appeal that a prisoner gives to prison staff. Put differently, it assumes that an appeal doesn't get marked as received only if a

prisoner didn't send it. Mr. Gapski's testimony about prison staff's inability to track appeals between when a prisoner tries to send one and the grievance specialists receive one refutes this premise. So while the defendants claim that the lack of institutional records of *this* appeal shows non-exhaustion, the lack of any record is consistent with Mr. Nur's version of events. As Judge Barker, in a similar case, explained:

> Although there is no record of any of these grievances in the prison database, that record is obviously only accurate as to the grievances that are actually inputted into the system by prison officials. In other words, even if a prisoner properly submits a grievance to an appropriate prison official, if the prison grievance specialist does not receive it, either because it is lost or forgotten, or if the grievance specialist fails for some other reason to input the grievance into the system, there would be no record of it having been filed.

Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *6–7 (S.D. Ind. Jan. 10, 2011).

The defendants' argument that the absence of evidence is conclusive evidence of absence doesn't contradict Mr. Nur's evidence that administrative remedies weren't available. The defendants' evidence is consistent with Mr. Nur's claims, so doesn't create a genuine issue as to whether administrative remedies were available to Mr. Nur. Administrative remedies weren't available to Mr. Nur, so he satisfied 42 U.S.C. § 1997e(a) before suing.

A court normally holds a Pavey hearing to resolve factual disputes bearing on administrative exhaustion, but needn't hold a hearing if it can resolve the issue of exhaustion on the documentary evidence. Bessler v. Wexford of Ind. LLC, No. 3:21-CV-691, 2022 U.S. Dist. LEXIS 199409, at *7–8 (N.D. Ind. Nov. 2, 2022). Neither party requested a Pavey hearing and the consistency between Mr.

Nur's claim of exhaustion and the defendants' evidence means there's no genuine issue of material fact. Accordingly, the court denies the defendants' motion for summary judgment and grants Mr. Nur's motion for summary judgment without a Pavey hearing.

Mr. Nur requested oral argument to help the court narrow its focus on the voluminous records and briefs across the consolidated cases. Oral argument is unnecessary, so the court denies the request for oral argument.

CONCLUSION

For these reasons, the court DENIES the defendants' motion for summary judgment; GRANTS Mr. Nur's motion for summary judgment; REJECTS the exhaustion defense; and DENIES AS MOOT Mr. Nur's motion for consolidated oral argument.

SO ORDERED.

ENTERED: <u>  August 15, 2023  </u>

<u>    /s/ Robert L. Miller, Jr.</u>
Judge, United States District Court
